CLERK'S OFFICE U.S. DISTRICT. COURT
AT ROANOKE, VA
FILED

SEP 21 2023

LAURA A. AUSTIN, CLERK
BY: /s/
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal No. 7:19-cr-00024-3 |
| v. ) | |
| ) | |
| KEHANA RENEE JAMES, ) | By: Michael F. Urbanski |
| Defendant-Petitioner ) | Chief United States District Judge |

## MEMORANDUM OPINION

Three motions are pending before the court. On June 1, 2023, Kehana Renee James, proceeding pro se, filed a motion asking the court to recommend to the Bureau of Prisons (BOP) that she be placed in a Residential Reentry Center (RRC) or on home confinement for the remainder of her prison term. ECF No. 458. On June 15, 2023, James filed a pro se motion for compassionate release, asking to be released to home confinement to care for her children. ECF No. 459. The court ordered the Federal Public Defender (FPD) to investigate James' claims and file a supplemental motion for compassionate release if she found that the circumstances warranted such relief. Order, ECF No. 461. The FPD filed a supplemental motion for compassionate release on August 6, 2023, the government responded in opposition on September 5, 2023, and James filed a reply on September 11, 2023. ECF Nos. 465, 468, 469. As discussed below, the court will **GRANT** the motions for compassionate release and **DENY as moot** the motion for a court recommendation to the BOP.

I.

James was involved in a drug-trafficking operation where she distributed methamphetamine and heroin in the Western District of Virginia. Statement of Facts, ECF No. 346. The heroin sometimes contained fentanyl and carfentanil, a powerful synthetic

opioid. Presentence Investigation Report (PSR), ECF No. 464 ¶¶ 7–14.

On October 3, 2010, James was charged in a superseding indictment with conspiracy to distribute and possession with intent to distribute various drugs. Superseding Indictment, ECF No. 46. James was released from custody on an unsecured bond on December 19, 2019. ECF No. 125. On June 3, 2021, she entered into a plea agreement in which she pled guilty to one count of conspiring to possess with intent to distribute and to distribute 500 grams or more of a mixture containing a detectable amount of methamphetamine, and 100 grams or more of a mixture containing a detectable amount of heroin, the use of which resulted in serious bodily injury to another, all in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). Plea Agreement, ECF No. 343.

At sentencing on June 1, 2022, the court, over the government's objection, found James eligible for a sentencing safety valve and did not impose the 10-year mandatory minimum sentence that would otherwise have been required.[1] Statement of Reasons, ECF No. 440. Noting mitigating factors including her limited involvement in the conspiracy and reduced culpability, the court sentenced James to a term of incarceration of 24 months, to be followed by a 3-year term of supervised release, varying downward from the United States Sentencing Guidelines range of 108–235 months of imprisonment. J., ECF No. 439; PSR, ECF No. 464 ¶ 69. The court deferred James' reporting date to the BOP until October 21, 2022, to allow her to obtain care for her three minor children. ECF Nos. 437, 442, 444, 446, 449. James currently is incarcerated at Federal Prison Camp Alderson and has a projected release date of

---

[1] See 18 U.S.C. § 3553(f) (limiting application of statutory minimum sentence to defendants with little criminal history who engaged in non-violent offenses).

2

January 20, 2024.² She has a home detention eligibility date of November 19, 2023. Sent. Monitoring Comp. Data, ECF No. 465-5 at 9.

At the time James surrendered to the BOP, she had arranged for her brother to care for her three young boys, ages 12, 8, and 4. However, her brother subsequently was arrested by state law enforcement authorities and currently is being held without bond pending trial. Upon her brother's arrest, James' grandmother stepped in to care for the boys and they are all living in James' aunt's house. The aunt travels frequently for her job and cannot assume care of the children. Mot., ECF No. 465. James' grandmother is 76 years old and has several health conditions, including diabetes mellitus, high blood pressure, high cholesterol, chronic kidney disease, non-rheumatic mitral regurgitation, and left ventricular hypertrophy. She also has a history of a fall. Medical R., ECF No. 465-4. James tells the court that her grandmother is unsure how much longer she can care for the boys because of her health problems and James fears that caring for the boys will take a grave toll on her grandmother's health. Mot., ECF No. 459 at 1–2. James would like to be released to home confinement so that she can take care of her children.

## II.

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act ("FSA"), authorizes courts to modify terms of imprisonment as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such

---

² https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (search "Kehana Renee James") (last viewed Sept. 5, 2023).

a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

Accordingly, James' requested relief requires the court to consider (1) if she exhausted her administrative remedies; (2) if so, whether there are extraordinary and compelling reasons that warrant a reduction in her sentence; and (3) if so, what, if any, sentence reduction is appropriate after considering the applicable 18 U.S.C. § 3553(a) factors.

### A. Exhaustion

Regarding exhaustion of administrative remedies, James submitted her request for compassionate release to the Warden of FPC Alderson on June 23, 2023, and received no response. Mot., ECF Nos. 465 at 2 and 465-1. The government does not contest that James has exhausted her administrative remedies. Accordingly, the court finds that James has satisfied the statute's exhaustion requirements.

### B. Extraordinary and Compelling Reason

The court must next consider whether James has shown an extraordinary and compelling reason for a reduction in her term of imprisonment. 18 U.S.C. § 3582(c)(1)(A). The United States Sentencing Commission Guidelines Manual ("USSG") § 1B1.13 policy statement provides that "extraordinary and compelling reasons" exist where (A) the defendant is suffering from a terminal or serious medical condition; (B) the defendant is over 65 years old,

4

has failing health, and has served at least ten years or 75 percent of her sentence, whichever is less; (C) the caregiver of the defendant's minor child dies or becomes incapacitated, or the defendant's spouse or partner becomes incapacitated and the defendant is the only available caregiver; or (D) as determined by the Director of the Bureau of Prisons ("BOP") for "other reasons" than, or in combination with, those described in Application Notes (A)–(C). U.S. Sentencing Comm., Guidelines Manual § 1B1.13 at cmt. n.1(A)–(D). In United States v. McCoy, 981 F.3d 271, 276 (4th Cir. 2020), the Fourth Circuit held that the USSG policy statement was not applicable to defendant-filed motions for compassionate release because it predates the passage of the First Step Act. However, it "remains helpful guidance even when motions are filed by defendants." Id. at 282 n.7.

James asserts that because her three young sons lack a parental caregiver, there exists an extraordinary and compelling reason warranting a reduction in her sentence.[3] James argues that under the application notes to USSG § 1B1.13, she does not have to show that she is the only available caregiver for her sons. She bases this assertion on the language in the discussion of family circumstances, which provides that a defendant may show "extraordinary and compelling reasons" for a sentence reduction in the following circumstances:

> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>
> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

---

[3] According to the PSR, the father of James' oldest son is deceased. PSR, ECF No. 464 ¶ 55. The father of her youngest son is incarcerated. Id.; ECF No. 28 in United States v. Divers, No. 7:18-cr-44 (W.D. Va. filed Sept. 13, 2018). The whereabouts of the middle child's father are unclear from the record. James advised that she has full legal custody of her two younger children and was in the process of obtaining full legal custody of her oldest son. PSR, ECF No. 464 ¶ 55.

5

USSG § 1B1.13, comment. (n.1(C)). James argues that based on this language, "the incapacitation of the caregiver of a defendant's minor children constitutes an extraordinary and compelling reason for a sentence reduction irrespective of whether there is another caregiver available, contrasting with the provisions related to the incapacitation of a defendant's spouse or partner—which only constitutes an extraordinary and compelling reason if there is no other available caregiver." Mot., ECF No. 465 at 5. James cites to no authority in support of her argument, and none was found.

To the contrary, courts generally deny compassionate release when another suitable caregiver is available for a defendant's child. See United States v. Lottier, No. 7:16-cr-030, 2020 WL 7233363, at *2 (W.D. Va. Dec. 7, 2020) (collecting cases denying compassionate release where there was an available caregiver for defendant's child); see also United States v. Guest, No. ELH-16-0499, 2022 WL 2104492, at *13 (M.D.N.C. June 9, 2022) ("[I]n the absence of evidence that an inmate is the sole available caregiver for his child, district courts typically find that the inmate's family circumstances do not amount to an extraordinary and compelling reason within the meaning of 18 U.S.C. § 3582(c)(1)(A)."); United States v. Landry, No. 2:16-cr-171 (RCY), 2021 WL 5493497, at *6 (E.D. Va. Nov. 22, 2021) (holding that despite his wife's deteriorating medical condition, the defendant had not made a "robust evidentiary showing" that he was the only available caregiver for his autistic son).

A court came to the opposite conclusion under circumstances similar but not identical to those presented by James. In United States v. Edmond, No. 5:17-CR-398-H, 2021 WL 1234509 (E.D.N.C. Apr. 1, 2021), the court found extraordinary and compelling circumstances when, early in the COVID-19 pandemic, the defendant showed he was at heightened risk if he were to

contract COVID-19 and also showed that his mother, who was caring for his children, had recently been hospitalized with congestive heart failure and other cardiac ailments and had recently been prescribed a cardiac life vest. Although the children had moved in with an aunt, the court held that based on "the unique combination of circumstances for this particular defendant," he had shown an extraordinary and compelling reason for compassionate release. Id. at 2. Also, this court found an extraordinary and compelling reason existed for compassionate release when a defendant showed that his two minor children had been placed in foster care after their mother became incapacitated. United States v. Quinones Rodriguez, No. 5:13cr30, 2020 WL 5045203, at *3 (W.D. Va. Aug. 26, 2020). After assessing the relevant factors under 18 U.S.C. § 3582(c)(1)(A), the court ordered that the defendant serve the last 36 months of his 108-month sentence on home confinement. Id. at *4. Nevertheless, taken as a whole, case law indicates that extraordinary and compelling circumstances based on the need to care for children are found only where the defendant is the only possible caregiver of the children needing care.[4]

Although the court does not adopt James' interpretation of USSG § 1B1.13, comment. (n.1(C)), that to qualify for compassionate release all a defendant must show is that her preferred caregiver is incapacitated, under the unique circumstances of James' case, she is entitled to compassionate release. Acknowledging that "incapacitation" is a high bar and that defendants must show that a caregiver has suffered a severe injury or suffers from a severe illness that

---

[4] To carry James' argument to its logical conclusion, if a defendant had extended family with relatives willing and able to care for the defendant's child while she was incarcerated, upon incapacitation of the first caregiver, the defendant would be able to show extraordinary and compelling circumstances warranting compassionate release, regardless of others who might fulfill the role of caregiver. Such a reading of the commentary would encourage a defendant to choose the least robust family member to care for her children in the hope that the family member would become incapacitated, and the defendant would be released. Such a reading of the commentary is untenable and unsupported by authority.

7

renders the caregiver incapable of caring for a child, Guest, 2022 WL 2104492 at *13 (citing BOP Program Statement § 5050.50(5));[5] the court finds that James has made the showing. Her grandmother is 76 years old and suffers from several health problems, including problems affecting her heart and chronic kidney disease. James' grandmother has told her that she is overwhelmed with taking care of the three boys, given her age and health conditions, and James fears losing the boys to the foster care system. Because the only available caregiver for James' children is her elderly grandmother who has several serious health conditions and who has expressed doubts about her physical ability to continue to care for the children, and also because James is eligible for release to home confinement in approximately two months, James has shown an extraordinary and compelling reason to warrant a sentence reduction.

### C. 18 U.S.C. § 3553(a) Factors

Having found that an extraordinary and compelling reason exists for a sentence reduction, the court "must 'consider[]' the § 3553(a) sentencing factors 'to the extent that they are applicable' in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment." United States v. High, 997 F.3d 181, 186 (4th Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)). Those factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;

---

[5] While courts are not bound by BOP Program Statements, the BOP criteria are helpful guidance. United States v. Roberts, No. CCB-13-0407, 2021 WL 5744687 at *1 (D. Md. Dec. 1, 2021).

8

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

(i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; . . . .

(5) any pertinent policy statement –

(A) issued by the Sentencing Commission . . . .

(6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

Looking first at the nature and circumstances of the offense, James and her four codefendants participated in a conspiracy that lasted almost two years and during which they distributed a large amount of methamphetamine and heroin. PSR, ECF No. 464 ¶ 7. The court is familiar with the devastation wrought by the opioid epidemic in the Western District of Virginia and James' participation in the drug conspiracy weighs against early termination of supervised release.

Turning to the history and characteristics of the defendant, prior to her conviction on the instant charges, James had a limited criminal history, with one six-month period of incarceration for possession of cocaine with intent to distribute. Id. ¶ 35. James had another conviction for possession of cocaine and possession with intent to distribute methamphetamine for which she was sentenced to a two-year period of probation. Id. ¶ 36. The rest of her criminal history involved driving offenses and a charge for failing to appear. Id. ¶¶ 32–34, 37–38.

James reported a turbulent childhood, including her mother being addicted to drugs and James and her siblings being removed from her father's home when he engaged in physical abuse. James and her sister spent approximately three years in foster care. Id. ¶ 53. She and her sister also reported sexual abuse at the hands of her grandmother's boyfriend. Id. ¶ 54. James does not allow her children to go to her grandmother's house or be around her boyfriend. Id. James also has a history of severe physical abuse perpetrated by the father of her youngest child. Id. ¶ 60.

During her period of supervision prior to sentencing and after sentencing while waiting to report to the BOP, James performed very well with no issues, and she maintained employment as a certified nursing assistant. Since being incarcerated, James has been working in food service and taking classes to obtain her GED. She has had no disciplinary infractions, is considered a minimum security risk, and is classified as being at a low risk for recidivism. She has never been described as engaging in violent behavior or activities. Taken as a whole and considering in particular how well she did for more than two years of pre-trial supervision and since being incarcerated, the court finds that James' history and characteristics weigh in favor of a sentence reduction.

Turning to the next factors, the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant, the court finds that allowing James to serve the last four months of her sentence on home confinement would be sufficient to accomplish these goals. In addition, James' term of home confinement will be followed by a 3-year period of supervised release, giving her an incentive to abide by the terms of supervision as well as help and guidance from her probation officer in doing so.

Looking at the kinds of sentences available and the applicable guidelines range, as discussed above, were it not for the safety valve, James faced a statutory mandatory minimum sentence of 120 months for her offense and a guidelines range of 108 to 135 months. Id. ¶¶ 69–70. However, at sentencing, the court found application of the safety valve was appropriate and that a sentence of 24 months satisfied the § 3553(a) factors given James' limited involvement in the conspiracy and her behavior while on supervision. Statement of Reasons, ECF No. 440 at 4–5. The court now finds that allowing James to serve the last four months of her sentence on home confinement is consistent with her previously imposed sentence and the range of punishment available to the court. None of the other § 3553(a) factors weigh in favor or against a reduction in James' sentence.

After considering the parties' arguments and the applicable § 3553(a) factors, the court concludes that a sentence reduction is warranted in James' case. Given the circumstances of this case as well as James' history and characteristics, the court concludes that allowing James to finish her sentence on home confinement is appropriate. Such a sentence is sufficient, but not greater

than necessary, to reflect the seriousness of James' conduct and criminal history, promote respect for the law, provide just punishment, afford specific and general deterrence, and protect the public. Based on the foregoing, James' motions for compassionate release, ECF Nos. 459 and 465, are **GRANTED**.

### III.

James also asks the court to recommend to the BOP that she be placed in an RRC or on home confinement. Because the court is granting James' motions for compassionate release, her motion for a placement recommendation from the court is **DENIED as moot**.

### IV.

For the reasons set forth above, James's motions for compassionate release, ECF Nos. 459 and 465, are **GRANTED**. James' motion asking the court to recommend placement in an RRC or on home confinement, ECF No. 458, is **DENIED as moot**.

An appropriate order will be entered.

It is so **ORDERED**.

Entered: September 21, 2023

Michael F. Urbanski
Chief United States District Judge